FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : : : : | |
| v. | : : | **OPINION** |
| MITCHELL KURLANDER and ALAN ABESHAUS, | : : : : | No. 2:11-cr-00315 (WHW) |
| Defendants. | : : : : | |

**Walls, Senior District Judge**

Gerry and Patricia Dale ("Relators") move to intervene in the above-captioned criminal matter against defendants Mitchell Kurlander ("Kurlander") and Alan Abeshaus ("Abeshaus") (collectively, "Defendants") under the False Claims Act ("FCA"), 31 U.S.C. § 3730(c)(5), for the purpose of obtaining a relator's share of the criminal fines, restitution and/or forfeiture paid by Defendants. Defendants and the Government oppose. Relators' motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following pertinent facts are taken from the parties' briefs, Relator's Fourth Amended Complaint ("FAC"), *United States ex rel. Dale, et al. v. Abeshaus, et al.*, No. 06-cv-04747 (JKG) (E.D. Pa.), ECF No. 90, and the criminal indictment (the "Indictment") in *United States v. Kurlander, et al.*, No. 11-cr-00315 (WHW) (D.N.J.), ECF No. 1, to which Defendants have pled guilty as to Count I.

Defendant Kurlander served as the Chief Financial Officer ("CFO") of Circle Systems Group, Inc. ("Circle"), a privately owned Pennsylvania corporation engaged in the business of

**FOR PUBLICATION**

selling and reconditioning athletic equipment, uniforms, and apparel. Indictment ¶ 1. From about 2003 until the company was sold in September 2005, Kurlander was also part owner of Circle. *Id.* As CFO, Kurlander was responsible for overseeing and managing Circle's accounts payables, accounts receivables, billing and the submission of bids and quotes to Circle's customers. *Id.* Defendant Abeshaus served as the de facto Chief Executive Officer ("CEO") of Circle and was the largest single shareholder of Circle until it was sold. *Id.* ¶ 2. As de facto CEO, Abeshaus was responsible for setting the policies and framework for Circle's operations, and he was always kept abreast of company developments by Circle's employees, including Kurlander (who is also his son-in-law). *Id.* About September 2005, Circle was acquired by Schutt Holdings, Inc. *Id.* ¶ 3.

Although Circle's products and reconditioning services were marketed nationally (and internationally—to schools funded and run by the Department of Defense Education Activity, *see* FAC ¶¶ 23-26), a large portion of its sales of athletic equipment and reconditioning services were to middle and high schools, colleges, and youth sports programs in New Jersey. Indictment ¶ 5. From at least August 1997 to June 2007, "in the District of New Jersey and elsewhere," Defendants "knowingly and intentionally combined, conspired, confederated and agreed to devise a scheme and artifice to defraud, and to obtain money and property from the [schools with which they did business] by means of materially false and fraudulent pretenses, representations, and promises," and for the purpose of executing that scheme and artifice, they "did use the United States mails, private and commercial interstate carriers, and interstate wire communications, contrary to Title 18, United States Code, Section 1341 (mail fraud) and Section 1343 (wire fraud)." *Id.* ¶ 8. The object of the conspiracy was to obtain money and other things of value from the schools for Circle by means of a number of fraudulent business practices, which included, but were not limited to, the following: (a) retaining, and converting to Circle's own use, duplicate payments by the schools

2

that should have been returned or credited to the schools; (b) submitting fake quotes to school athletic officials so that their purchases from Circle would seemingly comply with applicable law, regulations, and policies; and (c) submitting fraudulent invoices to the schools in order to: (i) recoup money that Circle had expended for donations to the schools and the school athletic officials; (ii) pay for personal gifts given to the school athletic officials; (iii) ensure that Circle achieved its desired profits on goods and services that had been intentionally "underpriced;" and (iv) hide the nature and timing of purchases by the school athletic officials when requested to do so by those school athletic officials. *Id.* ¶ 9; *see also id.* ¶¶ 10-46 (Means and Methods of the Conspiracy).

Relators brought the corresponding civil matter, *United States ex rel. Dale, et al. v. Abeshaus, et al.*, No. 06-cv-04747 (JKG) (E.D. Pa.). Beginning November 19, 1993, Gerry Dale was employed by Circle as a sports production manager. Mot. to Dismiss Op. at 14, E.D. Pa. No. 06-cv-04747 (ECF No. 106).[1] Relators filed a civil *qui tam* action in the Eastern District of Pennsylvania under the federal FCA on October 20, 2006, alleging that Defendants were engaged in fraudulent activities. *See* FAC ¶ 26 n.5. The case was placed in civil suspense by the Clerk of the Court and remained under seal until 2009, during which time Relators filed a second amended complaint. *See* Mot. to Dismiss Op. at 5, E.D. Pa. No. 06-cv-04747. On September 3, 2009, the United States notified Relators and the court that it was declining to intervene in that action. *See* Notice to Decline Intervention, E.D. Pa. No. 06-cv-04747 (ECF No. 17). On September 22, 2009, Relators filed their third amended complaint under seal. *See* Third Am. Compl., E.D. Pa. No. 06-cv-04747 (ECF No. 41). After various proceedings in the Eastern District of Pennsylvania, *see*

---

[1] Patricia Dale also appears to have been employed by Circle (or one of the Schutt corporate entities) as an administrative assistant, though there is no discussion of that in the FAC. *See* Mot. to Dismiss Op. at 14 n.19, E.D. Pa. No. 06-cv-04747.

**FOR PUBLICATION**

Mot. to Dismiss Op. at 5-7, E.D. Pa. No. 06-cv-04747, Relators filed their FAC on August 15, 2012, which alleges claims against Abeshaus and Kurlander, along with Eric Abeshaus and David Drill (the President of Circle during the relevant time period). Count I of the FAC asserts a claim under the FCA. Counts II through IX assert state-law claims for violations of the false claims acts of various states.

Defendants had ceased directing the operations of Circle (then owned by Schutt Holdings, Inc.) in October 2008, and on December 22, 2008, David Drill was charged by a one count information in the District of New Jersey with conspiracy and defrauding the United States' government in violation of 18 U.S.C. § 371. Mot. to Dismiss Op. at 23-24, E.D. Pa. No. 06-cv-04747. On May 10, 2011, Defendants Kurlander and Abeshaus were charged by a twenty-two count indictment in this Court with violations of 18 U.S.C. §§ 981(a)(1)(c), 1341, 1343, 1349 and 2, as well as violations of 28 U.S.C. § 2461. *See* Indictment.

The charges against Kurlander and Abeshaus in the information and Indictment arose from the same underlying conduct that formed the basis of the FAC. *See* Mot. to Dismiss Op. at 24, E.D. Pa. No. 06-cv-04747.[2]

On March 22, 2013, Defendants both entered into plea agreements with the U.S. Attorney's Office in which they agreed to plead guilty to Count I of the Indictment in exchange for the Government's agreement not to initiate any further charges against them. *See* Plea Agreements (ECF Nos. 53, 56). As part of Abeshaus's plea agreement, he agreed to pay restitution in the amount of $1,000,000. *See* Abeshaus Plea Agreement at 2 (ECF No. 56). In addition, Abeshaus agreed that, as part of his acceptance of responsibility and under 18 U.S.C. § 981(a)(1)(C) and 28

---

[2] The Court assumes for the purposes of this opinion that it was the information provided by Relators in their various complaints that notified the Government as to the fraud being committed by Defendants. None of the parties nor the Government has ever disputed this.

4

FOR PUBLICATION

U.S.C. § 2461, he would consent to the entry of a forfeiture money judgment in the amount of $500,000. *Id.* Kurlander's plea agreement did not contain a forfeiture provision and, although it provided for the payment of restitution, it did not specify any amount. *See* Kurlander Plea Agreement at 2 (ECF No. 53). On April 2, 2013, this Court accepted Defendants' guilty pleas to Count I of the Indictment. ECF Nos. 51, 54. Defendants are awaiting sentencing.

On March 14, 2014, Relators filed their motion for intervention and disbursement of alternate remedy funds in the criminal action before this Court. ECF No. 59. Defendants filed a brief in opposition to that motion on April 7, 2014. ECF No. 61. The Government filed a brief in opposition on May 27, 2014. ECF No. 63. Relators filed a reply to the Government's opposition on June 3, 2014. ECF No. 64.

## LEGAL STANDARD

The FCA, 31 U.S.C. §§ 3729-3733, is an anti-fraud statute that imposes liability against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." *Id.* § 3729(a)(2). Persons who violate the FCA are liable for civil penalties and treble damages, plus the costs incurred in bringing an FCA lawsuit. *Id.* § 3729(a). To enhance enforcement, the FCA permits private persons known as "relators" to bring *qui tam* actions on behalf of the Government. A *qui tam* suit is filed in camera, and remains under seal for sixty days. *Id.* § 3730(b)(2). The *qui tam* complaint will remain under seal for longer than sixty days when the Government shows good cause to do so. *Id.* § 3730(b)(3). The relator must present all material evidence to the Government, and the Government must then choose to intervene and proceed with the *qui tam* action or to decline intervention. *Id.* §3730(b)(4). If the suit is successful, the relator receives a portion of the Government's recovery. *Id.* § 3730(d). If the Government "proceeds with the action," the relator

**FOR PUBLICATION**

will receive between 15 and 25 percent of the Government's recovery, "depending upon the extent to which the person substantially contributed to the prosecution of the action," plus reasonable expenses. *Id.* §3730(d)(1). If the relator proceeds on her own, she will receive between 25 and 30 percent of the proceeds, plus reasonable expenses. *Id.*

In addition, the United States "may elect to pursue its claim through any alternate remedy available to the [United States]." *Id.* § 3730(c)(5). If the United States pursues an alternate remedy, the relator "shall have the same rights in such proceeding as such person would have had if the action had continued under this section." *Id.* "Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section." *Id.*

## DISCUSSION

The central issue before this Court is one of first impression in this District and Circuit: whether a relator in a *qui tam* action is entitled to a relator's share when the United States has declined to intervene in the *qui tam* action but has pursued criminal prosecution against the defendant and as a result has the ability to recover a portion of the defendant's available assets through criminal forfeiture proceedings and/or the payment of restitution. The Court holds that the relator is not entitled to intervene in a criminal proceeding under such circumstances.

Relators argue that the United States pursued its claim against Defendants through an alternate remedy: prosecuting Defendants and making significant recoveries through criminal forfeiture and restitution. Defendants and the Government argue, inter alia, that a criminal prosecution resulting in criminal forfeiture and/or restitution payments cannot be considered an alternate remedy under § 3730(c)(5).

**FOR PUBLICATION**

Relators support their position that a criminal prosecution is an alternate remedy by pointing out that the Sixth Circuit defined "alternate remedy" as "the government's pursuit of any alternative to intervening in a realtor's *qui tam* action," *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 647 (6th Cir. 2003), and was "persuaded that the plain language of § 3730(c)(5) makes clear that a relator's participation rights are preserved when the government pursues the relator's claims through any means alternative to intervening in the *qui tam* action," *id.*

Relators also support their position by pointing to the legislative history of the FCA, which lists criminal prosecutions as one example of an alternate remedy. *See* H. Rep. 660, 99th Cong., 2d Sess. 2 (June 26, 1986) (House Judiciary Committee Report) ("The section further provides that, notwithstanding the filing of a *qui tam* action, the Government may pursue its claim through alternate remedies available to it, such as a criminal prosecution . . . .").

And Relators contend that the legislative policy underlying the FCA provides additional support for their position because, as the Ninth Circuit has stated:

> The FCA is designed to help fight fraud against the government by encouraging private individuals to come forward with information about fraud that might otherwise remain hidden. The encouragement is provided by giving these individuals a relator's share of any recovery obtained using the relator's information in an FCA action, or an equivalent share of a recovery obtained using that same information to procure an 'alternate remedy.'

*United States ex rel. Barajas v. Northrop Corp.*, 258 F.3d 1004, 1012 (9th Cir. 2001). Relators argue that allowing the Government to avoid sharing the proceeds of its fraud recoveries, obtained from *qui tam* defendants through criminal prosecutions, "would not further Congress' legislative intent that the government and private citizens collaborate in battling fraudulent claims, and it would impede, not further, Congress' legislative intent to encourage private citizens to file *qui tam* suits." *Bledsoe*, 342 F.3d at 649. Relators assert that given the general purpose and structure of the

7

FCA, this Court should find that criminal prosecutions are an alternate remedy under the statute. *See S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350-51 (1943) ("[C]ourts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.").

To support this legislative policy argument, Relators heavily rely upon an unpublished 2005 decision from the Southern District of Indiana, *United States v. Bisig*, Crim No. 02-112, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005). In *Bisig*, Home Pharm, a Kentucky corporation registered with Indiana Medicaid as a pharmacy provider, supplied Indiana Medicaid recipients with in-home pharmaceutical products. *Id.* at *1. Peggy and Philip Bisig owned and operated Home Pharm, and from 1996 to 2000, Home Pharm engaged in a number of fraudulent practices victimizing the Indiana Medicaid Program, among others. *Id.* The relator in that matter, Health Care Fraud Detection Systems, Inc. ("FDSI") investigated Home Pharm and filed a *qui tam* action under the civil FCA. *Id.* After FDSI's *qui tam* filing, the United States soon joined FDSI's investigation of Home Pharm and Ms. Bisig. *Id.* The United States declined to intervene in FDSI's *qui tam* action, and an indictment was returned against Home Pharm and Ms. Bisig. *Id.* Eventually Ms. Bisig pled guilty in the criminal action, and as part of her plea agreement she agreed to forfeit various pieces of real and personal property that were acquired by her personally during her fraud scheme, as well as the assets of Home Pharm. *Id.* at *2. FDSI filed a motion to intervene and to stay disbursement of defendant's assets in the criminal action. *Id.* The court granted that motion to intervene, holding that a *qui tam* relator had the right to intervene in the forfeiture portion of a criminal prosecution as an alternate remedy proceeding under § 3730(c)(5) in order to obtain a relator's share percentage of forfeiture proceeds. *Id.* at *4-6. The court reasoned that the FCA must be interpreted in a manner

8

that will maintain the incentive underlying the *qui tam* aspect of the FCA, and that the only way to do that was to find that the United States elected to pursue its claim through an "alternate remedy" under § 3730(c)(5) when it criminally prosecuted defendants. *Id.* The court found this interpretation "especially appropriate" where the United States declined to intervene in the *qui tam* action in order to pursue criminal prosecution against the defendant and recover the defendant's assets through forfeiture proceedings. *Id.* at *4. The Court asserted that "[s]imply stated, the United States cannot sidestep the requirement to share recovery with the relator[s], who contend[ ] that [they] first discovered the fraud and informed the United States regarding the fraud, by merely electing to recover through criminal forfeiture proceedings." 2005 WL 3532554, at *4. Relators argue that the result should be the same in this case.

Defendants and the Government argue, on the other hand, that a criminal prosecution is not an "alternate remedy" under the statute. They say that the plain text of § 3730(c)(5) does not support the notion that a criminal proceeding constitutes an alternate remedy because whereas § 3730(c)(5) expressly provides that any alternate remedy may "include any administrative proceeding to determine a civil money penalty," it makes no mention of criminal proceedings.

As to Relators' argument that the legislative history of the FCA amendments supports their position, Defendants contend that the fact that Congress at one time contemplated including criminal prosecutions as an alternate remedy under the statute does not vitiate its subsequent decision not to include such language in the final alternate remedy provision. To the contrary, Defendants claim, such exclusion evinces a congressional intent that a criminal prosecution not qualify as an alternate remedy.

Regarding the legislative policy and purpose underlying the FCA, Defendants and the Government state that if this Court endorsed the notion that criminal proceedings qualify as an

alternate remedy, this Court would be implicitly holding that *qui tam* relators have rights in those criminal proceedings, which would be incorrect since third parties generally have no right to intervene in criminal proceedings. *See* Defs.' Br. in Opp'n to Mot. for Intervention at 7-8 (ECF No. 61). They also assert that *Bisig* was wrongly decided and, as it is not binding on this Court, should be ignored.

Defendants and the Government also argue that even if this Court were to determine that a criminal proceeding may qualify as an alternate remedy under § 3730(c)(5), this particular criminal proceeding cannot qualify as such a remedy under its facts. Defendants and the Government assert that in this criminal proceeding, the Indictment charged Defendants with, and they pleaded guilty to, one count of conspiracy to commit mail and wire fraud arising out of a scheme to obtain money from schools in New Jersey, and that there was never an allegation in this criminal action that Defendants violated the federal FCA. According to Defendants and the Government, the restitution and forfeiture amounts in Defendants' plea agreements represent and are associated with only false claims paid by the state of New Jersey. As a result, Defendants and the Government contend that Relators are not entitled to share in any recovery obtained by the Government in this case because their federal FCA claims do not concern schools in New Jersey. *See id.* at 6-7.

Finally, Defendants and the Government argue that Relators are statutorily barred from intervening in this case for the purpose of claiming an interest in the forfeited property because an ancillary proceeding held after the Court's entry of a preliminary order of forfeiture is the only avenue for Relators to assert their interests in property subject to forfeiture. *See* 21 U.S.C. § 853(n) (2006); Fed. R. Crim. P. 32.2(b)(2)(A).

This Court agrees with Defendants and the Government that under the facts of this case a criminal proceeding may not qualify as an alternate remedy under § 3730(c)(5). As such, Relators' motion is denied.

As an initial matter, this Court finds that intervention by civil litigants in these criminal proceedings is inappropriate because no private party has a judicially cognizable interest in a criminal prosecution. It is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D. and Texas*, 410 U.S. 614, 619 (1973). The Supreme Court has made clear that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" and that criminal prosecutions have "special status" in our legal system. *Id.* There is no authority that would allow Relators to intervene in these criminal proceedings.

Specifically with regard to the forfeiture aspects of the criminal prosecution—as Relators argue they only seek to intervene in the forfeiture proceeding for the sole purpose of obtaining a relator's share of the criminal fines, restitution and/or forfeiture paid by Defendants—21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b), explicitly prohibits intervention. Section 853(k) provides:

> (k) Bar on intervention
>
> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may—
>
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

**FOR PUBLICATION**

21 U.S.C. § 853(k). And 21 U.S.C. § 853(n) sets forth that an ancillary proceeding held after the Court's entry of a preliminary order of forfeiture is the only avenue for individuals to assert their interests in property subject to forfeiture. These provisions specifically bar the remedy sought by Relators here.

Furthermore, Relators argument that they are entitled to intervene in this criminal action because the criminal prosecution of the Defendants is an "alternate remedy" under § 3730(c)(5) of the civil FCA is unpersuasive. Section 3730(c)(5) provides:

> Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law in such other proceeding that has become final shall be conclusive on all parties to an action under this section.

31 U.S.C. § 3730(c)(5). Section 3730(b)(1) limits a relator's options to bringing "a civil action for the violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). There is nothing in section 3730 that allows a relator to bring or otherwise participate in a criminal prosecution. And the history of the separation between civil and criminal proceedings in this nation's legal system is such that had Congress intended otherwise in enacting the civil FCA, it would have said so. *See United States v. Lustman*, Crim. No. 05-40082, 2006 WL 1207145, at *3 (S.D. Ill. May 4, 2006) ("The purpose of a criminal prosecution is simply to determine whether the United States can sustain its burden of proof and, if necessary, determine an appropriate sentence for the defendant. This is the gravest and most consequential business of the Court. Surely Congress would have explicitly specified criminal prosecutions as an 'alternate remedy' if it intended the result urged here.").

**FOR PUBLICATION**

It is important to note that Relators are not left without a remedy. They are free to pursue their civil *qui tam* action, which remains pending in the Eastern District of Pennsylvania.

Finally, Relators have not made any showing that the criminal pleas entered in this action actually implicate any federal dollars or monies recoverable under their FCA action. The criminal conduct and restitution related to this criminal action are not associated with any false claims paid by the United States, but rather only relate to a scheme to obtain money from the New Jersey schools. This federal criminal action, therefore, cannot be considered an "alternate remedy" because it does not purport to recover anything that would be recoverable in the *qui tam* action. *See United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, Civ. No. 01-4078 (DMC), 2006 WL 776795, at *2 (D.N.J. Mar. 24, 2006) (rejecting a relator's claim for an alternate remedy because the relator failed to establish a violation of the FCA, recognizing as the first element of a prima facie case under the FCA that "the relator must prove: (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment").

## CONCLUSION

Relators' motion to intervene is denied. An appropriate order follows.

Date: June 10, 2014

/s/ William H. Walls
United States Senior District Judge
